WILLIAM G. ELLSWORTH, RESPONDENT, *v.* LEANDER S. PHELPS, APPELLANT.

*Chattel mortgage — agreement that the mortgagor may sell the mortgaged articles and apply the proceeds upon the debt — a subsequent judgment creditor is entitled to have an account of the sales so made stated, and to have the amount thereof applied to reduce the mortgage debt.*

APPEAL from a judgment in favor of the plaintiff, entered on the report of a referee.

The action was brought to recover damages for the conversion of goods, in a store occupied· by Paige, in Forrestville. The defendant ʼjustified the taking of the goods under an execution issued upon a judgment recovered by Sweet & Co. against Henry Paige for $1,668.65. The execution was issued to the defendant, as sheriff, and received by him on the 7th of August, 1877. Under it he subsequently levied upon and sold the goods.

The plaintiff loaned Paige $1,200 in June, 1876, and took his notes therefor. On the 22d of September, 1876, Paige gave plaintiff a chattel mortgage on his stock of boots and shoes in his store to secure the $1,200, conditioned to pay $1,200 and interest from June 15, 1876, two years thereafter. Subsequently and on the 11th of May, 1877, Paige executed another chattel mortgage to secure $1,400, being for money loaned, supposed to be the same loan mentioned in the notes and mortgage already referred to. The time of payment named therein was June 8,. 1879. Both these mortgages were accompanied with an agreement between the mortgagor and mortgagee, as to the management of the mortgaged property.

Among other things it stipulated viz., that so long as the party of the second part shall permit, the party of the first part is at liberty to sell any or all of said goods for cash as the agent of the party of the second part and pay the proceeds to the said party of the second part who will apply the same on said mortgage, and it is expressly agreed that the said party of the first part shall have no right to sell except as above provided." The mortgagor remained in possession of the stock, selling therefrom and using the proceeds, the same as before the execution of the mortgages. No accounting was had of the sales, and the same have not been ascertained and applied upon the mortgages.

The court at General Term said: "Under such an agreement the sales should be accounted for, and their amount credited and applied upon the mortgage debt. It was held in *Conkling* v. *Shelley* (28 N. Y., 360) that the sales made, and proceeds received by the mortgagor under such an agreement, should be applied in payment and satisfaction of the mortgage; whether the money is ever actually paid over to the mortgagor or not." EMOTT, J., said, on page 363, viz.: 'Such an agreement, made the mortgagors agents of the mortgagees. Their possession and their sales were in effect those of the mortgagees. It was as if the latter had taken possession and placed a third person in charge as agent to sell and account to them. They could not have escaped from crediting on their indebtedness *the proceeds* of sales made by such an agent, because he had fraudulently or dishonestly misapplied or employed the money.' * * All that remains after satisfying the mortgage belongs to the mortgagor *and is subject* to the executions and must be applied upon the judgments in the sheriff's hands.' The doctrine is not disturbed in *Brackett* v. *Harvey* (91 N. Y., 215).

"Without passing at the present time upon the evidence tending to show that the mortgages were in fact fraudulent, under the rule in *Southard* v. *Benner* (72 N. Y., 424), and in *City Bank* v. *Westbury* (16 Hun, 459). We are of the opinion that the defendant was entitled to have an account stated of the sales and proceeds of the mortgaged property arising after the date of the last mortgage, and whatever it amounted to, applied in satisfaction of the mortgage debt, and whatever it amounted to, operated as a satis-

faction of the mortgages as far as they stand in the way of the creditor represented by the defendant." * * *

*H. C. Day*, for the appellant.

*Morris & Russell*, for the respondent.

Opinion by HARDIN P. J.; BARKER, J. concurred; DWIGHT, J., not sitting.

Judgment reversed and new trial ordered before another referee, costs to abide the event.